## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARIBEL IRETA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| NATIONAL LOUIS UNIVERSITY; | ) |
| Its Board of Trustees; Nivine Megahed, | ) |
| President; Thomas Bergmann, Vice President | ) |
| Human Resources; McCeil Johnson, Executive | ) |
| Director Legal Affairs; Erin Haulotte, Director | ) |
| of Employment; George Litman, VP of | ) |
| Strategic Affairs (fmr. Provost); Kathleen | ) |
| Walsh, Provost; and Ana Maria Soto, Executive | ) |
| Director Latino Initiatives, | ) |
| | ) |
| Defendants. | ) |

## NOTICE OF REMOVAL BY DEFENDANTS

Defendants, National Louis University ("NLU"), its Board of Trustees; Nivine Megahed, Thomas Bergmann, McCeil Johnson, Erin Haulotte, George Litman, Kathleen Walsh, and Ana Maria Soto, by and through their attorneys, Jody Wilner Moran and Sarah J. Gasperini of Jackson Lewis LLP, and pursuant to 28 U.S.C. § 1441 and 1446 and the Rules of the United States District Court for the Northern District of Illinois, hereby remove the instant action from the Circuit Court of the Cook County, Illinois, County Department, Civil Division ("State Court"), to this United States District Court for the Northern District of Illinois, on the following grounds:

1.     On or about December 6, 2012, Plaintiff Maribel Ireta ("Plaintiff") filed a Complaint at Law ("Complaint") against Defendants NLU; Its Board of Trustees; Nivine Megahed, President; Thomas Bergmann, Vice President Human Resources; McCeil Johnson, Executive Director Legal Affairs; Erin Haulotte, Director of Employment; George Litman, VP of Strategic Affairs; Kathleen Walsh, Provost; and Ana Maria Soto, Executive Director Latino

Initiatives. The case was assigned Case Number 2012 L 13720 in the Circuit Court of Cook County, Illinois, County Department, and Civil Division. A copy of Plaintiff's Complaint is attached hereto as Exhibit A.

   2. On or about December 10, 2012, Plaintiff served a Summons and Complaint upon George Litman, the first Defendant to be served. *See* Exhibit B & fn. 1. On or about December 11, 2012, Plaintiff served a Summons and Complaint upon NLU. *See* Exhibit B. On or about December 14, 2012, Plaintiff served a Summons and Complaint upon Erin Haulotte. *See* Exhibit B. On or about December 19, 2012, Plaintiff served a Summons and Complaint upon Thomas Bergmann. *See* Exhibit B. On or about December 26, 2012, Plaintiff served a Summons and Complaint upon Ana Maria Soto. *See* Exhibit B. The Summons and Complaint are the only pleadings that have been served on or received by the Defendants. No Defendant has filed an answer or responsive pleading to the Summons and Complaint, nor have they made any appearance or argument before the State Court. [1]

   3. In her Complaint, Plaintiff attempts to plead several claims associated with her termination: the Fair Labor Standards Act of 1938 ("FLSA"), the Mental Health and Family and Medical Leave Act of 1993 [sic] ("FMLA"), the Americans with Disabilities Act of 1990 ("ADA"); the ADA Amendments Act' of 2008 ("ADAAA"); the Racketeer Influenced and Corrupt Organization Act of 1962 ("RICO") (collectively "Plaintiff's federal claims"); Breach of Implied Employment Contract; and Wrongful and Retaliatory Termination (collectively "state law claims.")

---

[1] Not all Defendants have been served but they anticipate service to be perfected at some point in the future. The rest of the Defendants agree with the removal of this action to United States District Court for the Northern District of Illinois. Also included with Exhibit B is a print out of the Circuit Court of Cook County Electronic Docket Search.

4.     Under 28 U.S.C. 1331, this Court has federal question jurisdiction over Plaintiff's FLSA, FMLA, ADAAA, and RICO claims because they arise under federal law. Accordingly, removal is proper under 1441(a) and (c).

5.     The state law claims asserted in the Complaint are integrally related to Plaintiff's federal claims and thus form a part of the same case or controversy. Accordingly, this Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

6.     In compliance with 28 U.S.C. 1446(b), this Notice of Removal was filed with this Court within thirty (30) days of the date on which Defendant George Litman received a copy of the Complaint through service or otherwise.

7.     Defendant submits this Notice of Removal without waiving any defenses to the claims asserted by Plaintiff or conceding that Plaintiff has pled claims upon which relief can be granted. Furthermore, Defendant reserves the right to supplement this Notice of Removal and/or present additional arguments in support of its entitlement to removal.

8.     The State Court from which this action is removed and in which this action was commenced is within this Court's district and thus venue is proper.

9.     This Notice of Removal will be filed promptly with the State Court, as required by 28 U.S.C. § 1446(d).

10.     By copy of this document and in accordance with the Certificate of Service, Defendant is providing notice to all parties in this action advising of the filing of this Notice of Removal, pursuant to 28 U.S.C. § 1446(d).

WHEREFORE, Defendants National Louis University, its Board of Trustees; Nivine Megahed, Thomas Bergmann, McCeil Johnson, Erin Haulotte, George Litman, Kathleen Walsh, and Ana Maria Soto respectfully removes the instant action from the Circuit Court Cook County, Illinois to the United States District Court for the Northern District of Illinois.

DATED: January 8, 2013

Respectfully submitted,

**NATIONAL LOUIS UNIVERSITY, its BOARD OF TRUSTEES; NIVINE MEGAHED, THOMAS BERGMANN, MCCEIL JOHNSON, ERIN HAULOTTE, GEORGE LITMAN, KATHLEEN WALSH, AND ANA MARIA SOTO**

By:

_____/s/ Jody Wilner Moran_____
One of Its Attorneys

Jody Wilner Moran (ARDC No. 6186236)
Sarah J. Gasperini (ARDC No. 6303368)
Jackson Lewis LLP
150 N. Michigan Avenue, Suite 2500
Chicago, IL 60601
(312) 787-4949
moranj@jacksonlewis.com
gasperis@jacksonlewis.com

**CERTIFICATE OF SERVICE**

    I, Jody Wilner Moran, an attorney, certify that on this 8th day of January, 2013, I caused a true and correct copy of the foregoing to be served by U.S. Mail, postage prepaid, upon the following:

Maribel Ireta
474 N. Lake Shore Drive
Unit 5506
Chicago, IL 60611

/s/ Jody Wilner Moran

**EXHIBIT A**

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CIVIL DIVISION

| | |
|---|---|
| MARIBEL IRETA | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| NATIONAL LOUIS UNIVERSITY; | ) |
| its Board of Trustees; Nivine Megahed, | ) |
| President; Thomas Bergmann, Vice President | ) |
| Human Resources; McCeil Johnson, Executive | ) |
| Director Legal Affairs; Erin Haulotte, Director | ) |
| of Employment; George Litman, VP of | ) |
| Strategic Affairs (fmr. Provost); Kathleen | ) |
| Walsh, Provost; and Ana Maria Soto, Executive | ) |
| Director Latino Initiatives | ) |
| | ) |
| Defendants | ) |
| | ) |

2012L013720
CALENDAR/ROOM Y
TIME 00:00
Retaliatory Discharg

Case No.:

$75,000.00

**PLAINTIFF COMPLAINT**

NOW COMES, Plaintiff, MARIBEL IRETA ("Ireta"), *pro se* and non-attorney and her complaint against Defendant, NATIONAL LOUIS UNIVERSITY, *et al.* ("NLU") for Breach of Implied Employment Contract, and Wrongful and Retaliatory Termination, under the protection of the National Louis University Employee Handbook, Fair Labor Standards Act of 1938 ("FLSA"), Mental Health and Family and Medical Leave Act of 1993 ("FMLA"), Americans with Disabilities Act of 1990 ("ADA") and the ADA Amendments Act of 2008 ("ADAAA"), and the Racketeer Influenced and Corrupt Organization Act of 1962("RICO"), herein states the following:

## **BACKGROUND**

1. Ireta was employed at NLU from November 12, 2007 – December 06, 2010, as Administrative Assistant III for Senior VP for Academic Administration and Provost office and under the immediate departments of Articulation & Compliance and Latino Initiatives. **(Exhibit A & A1)**

2. On June 06, 2008, Ireta's supervisors, Lois Bishop ("Bishop") and Ana Maria Soto ("Soto"), along with Human Resources ("HR") approved Ireta's first annual performance review, as "outstanding", with remarks that Ireta was "exceeding expectations". **(Exhibit B)**

3. As early as May 2008, and in accordance to NLU's Compensation and Salary Administration Policy **(Exhibit C)**, Bishop attempted to reach out to HR to revise Ireta's position description to accurately depict Ireta's role at NLU. **(Exhibit D)**

4. Bishop also began to alert Ireta's superior, Provost, George Litman ("Litman") and HR, that Ireta's workload had exceeded her intended and official capacity. Litman and HR were notified that the extensive and demanding workload Ireta had been enduring since the beginning of her employment brought forth inter-department issues from Ireta having to assist two directors and various other individuals, which needed to be addressed.

5. In March 2009 and in accordance to the Employee Complaint procedure **(Exhibit E)** Ireta requested a meeting with Litman to discuss the terms of her position description and salary, in contrast to the role and responsibilities Ireta was actually fulfilling, in comparison to Ireta's department peers with the same title. This was Ireta's second informal complaint.

6. Ireta explained the demanding workload, the growing tension in the department among her two supervisors, Bishop and Soto, trying to "share" Ireta, the long hours Ireta worked in some instances for events but not being paid overtime, the nights Ireta stayed to work off-the-clock just to complete projects for both supervisors, and the many skipped lunches Ireta worked through but was made to mark on her timecard due to the strict HR rules. Ireta asked Litman for a position description revision or promotion with retroactive compensation.

7. Litman agreed and admitted to a miscalculation of Ireta's position but could not offer Ireta any remedy to repair the situation or revise Ireta's official position or salary, despite Ireta being required to perform duties above and beyond the scope of Ireta's job description.

8. In July 2009, prior to completion of Ireta's second performance review, Litman instructed Ireta's supervisor, Bishop, to discontinue communications with HR and cease all efforts to amend Ireta's position description or attempts to promote Ireta. Bishop notified Ireta.

9. On July 07, 2009, Ireta's second performance review was again awarded "outstanding" marks for her work and contributions to NLU. It stated that Ireta's requests for assistance had 'grown to exceed the capacity of any one person's job responsibilities', and Ireta did so with "integrity and commitment". **(Exhibit F)**

10. Ireta filed comments to her second performance review noting the past years events within the department and looking ahead; Ireta's comments were excluded from the final record as per HR directive. **(Exhibit F1)**

11. Human Resources, being made aware of the disproportionate workload Ireta was faced with, did not inquire further or investigate the allegations and requests brought forth by Bishop.

12. January 4, 2010, Ireta's direct supervisor, Lois Bishop left NLU.

13. February 10, 2010, Ireta applied for transfer to a new position within Academic Advising and received the appropriate supervisory authorization from Soto; Ireta's only supervisor at that time.

14. On February 11, 2010, Ireta was called into the new Provost's office, Kathleen Walsh ("Walsh"), to discuss Ireta's request for transfer. Also in attendance was the Director of Academic Advising, the department Ireta was seeking transfer to.

15. Walsh and Soto engaged in inappropriate and unprofessional tactics in attempts to dissuade Ireta from transfer. Walsh continued to violate NLU's Recruiting and Selection Policy **(Exhibit G)** by offering Ireta a promotion for an anticipated position in the future, if Ireta discontinued her transfer request.

16. No formal promotion or offer was given at the time but was promised by Walsh by the following week. No such promotion was ever given to Ireta and the position within the Academic Advising Center was removed from the positing website immediately without being filled.

17. On May 19, 2010, Ireta filed a formal grievance complaint consisting of 19-pages and appendixes, with Human Resources Director of Employment and Diversity, Erin Haulotte ("Haulotte"), citing the various attempts made by Bishop and Ireta to reconcile and accurately revise Ireta's position description and role. Ireta also cited other unfair practices and clear violations of NLU's policies, Ireta was made subject to by her supervisor, Soto and Provost Walsh.

18. June 2010, during a routine checkup, Ireta's physician observed high levels of stress and signs of depression. Ireta described symptoms of anxiety, disruption of sleep patterns, and Ireta was prescribed medication and referred Ireta to a therapist for occupational stress and anxiety.

19. NLU's HR was alerted of Ireta's condition and request for time off, prescribed by Ireta's physician. Ireta sent the physicians note **(Exhibit H)** to HR and requested additional sick-leave. HR denied additional sick-leave.

20. August 11, 2010, after four months of dilatory practices by HR, Haulotte concluded Ireta's grievance investigation. **(Exhibit I)**

21. Haulotte's findings determined that Ireta's position, title, and grade did not warrant any change.

22. Haulotte also cited no wrongful doing on behalf of NLU, its administrators, or Ireta's direct supervisors, despite Haulotte's contradicting recommendations and conclusions stating otherwise.

23. August 2010, Ireta filed for another position transfer to the Alumni Giving department but Ireta never received any communications from HR to schedule an interview.

24. On August 17, 2010, Ireta was subjected to retaliation by Soto in her third and final performance review, with unsubstantiated lower marks of mid-level 'satisfactory' work performance. Ireta requested grounds for such markings, but Soto did not provide explanation, verbally or written. Ireta filed extensive comments on the 2010 review in protest of Soto's unfounded review of Ireta's performance. **(Exhibit J)**

25. Also on August 17, 2010, Ireta appealed Haulotte's findings, in accordance to Employee Complaint procedure to the VP of Human Resources, Thomas Bergmann ("Bergmann") and Haulotte.

26. Ireta received no direct response from Bergmann.

27. Ireta, dissatisfied with the sole response from Haulotte, emailed both Haulotte and Bergmann in response and again received no response or intervention from Bergmann.

28. On September 21, 2010, Ireta's supervisor, Soto engaged in an unprofessional and offensive verbal attack on Ireta.

29. Ireta immediately notified Bergmann, the VP of Human Resources and NLU's President, Nivine Megahed ("Megahed").

30. Bergmann replied the following day on September 22, 2010 with an electronic meeting request set for six days out, on September 28, 2010.

31. Bergmann never made any attempts to immediately intervene or mediate the situation between Soto's actions and Ireta's safety. President Megahed, also never made any attempts to reach out to Ireta.

32. On September 27, 2010, Ireta, dissatisfied with Bergmann's lack of intervention emailed a third appeal to Bergmann and President Megahed, asking to be transferred immediately and Soto be addressed about her behavior and actions.

33. On September 28, 2010, Bergmann and NLU's General Counsel, McCeil Johnson ("Johnson"), went to Ireta's office to discuss her appeals and emails.

34. Ireta was denied representation or additional witness to said meeting.

35. Ireta's was informed that she would now report directly to Litman, now VP of Strategic Affairs, and Ireta's office would be relocated effective Monday, October 04, 2010.

36. On October 06, 2010, Ireta met again with Bergmann and Johnson to discuss Ireta's grievance, appeals, and recent relocation.

37. Ireta was again denied any representation, tape recording of the meeting, or witness to said meeting. **(Exhibit K)**

38. Throughout the October 06, 2010 meeting, Bergmann and Johnson engaged in unprofessional, accusatory, intimidating, and menacing behavior and language against Ireta.

39. Ireta asked to stop the meeting, beginning to experience emotional anxiety from the verbal harassment and behavior, particularly from Thomas Bergmann, VP of HR. McCeil Johnson, General Counsel, did nothing to stop the behavior.

40. The meeting concluded with Bergmann and Johnson demanding Ireta again list and detail her complaints for their investigation. Ireta pleaded that Bergmann and Johnson use the already documented complaints and various documentation to conduct their investigation, citing that the stress of reliving the situations and having to re-document the issues would cause Ireta further distress. HR had already been previously made aware of Ireta's condition. Johnson and Bergmann refused and demanded an outline from Ireta.

41. During the meeting, Ireta also raised concerns about her multiple attempts to transfer positions, including the most recent request in August 2010. Bergmann replied that he had been made aware of my request and that Ireta was "not qualified" and should have been notified by HR.

42. On October 08, 2010, Ireta inquired again with HR about the unfilled position Ireta had applied for in August 2010. HR responded and requested to schedule a full panel interview the following Monday, October 11, 2010, despite Bergmann's remarks that Ireta was not qualified for the position.

43. Ireta was subsequently denied the position on October 13, 2010. Ireta believes this was an attempt on HR's behalf to create a paper trail demonstrating Ireta was given a fair and equal opportunity to apply. **(Exhibit L)**

44. On October 14, 2010, Ireta complied a hefty complaint to the President of NLU, Nivine Megahed, against Thomas Bergmann and McCeil Johnson for their October 06, 2010 behavior and subsequent employment practices. Ireta requested that any contact with Bergmann and Johnson be terminated pending an investigation from the President's office.

45. Ireta also included a complete file and record of all of Ireta's employment experiences at NLU, grievances, appeals, and efforts to find resolution to Ireta's flawed role and position at NLU. Ireta inter-officed the packet from her 5th floor office to the President's 2nd floor office.

46. Ireta received no response from President, Nivine Megahed.

47. On November 08, 2010, Ireta filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). **(Exhibit M)**

48. On Tuesday, November 30, 2010, Johnson and Bergmann sought out Ireta to demand a meeting. Ireta replied that she had reached out to President Megahed and informed Bergmann and Johnson, that due to their previous display of behavior during their last meeting in October, Ireta preferred to await reply from President Megahed before engaging any further with Bergmann or Johnson.

49. At this point it had been more than two months since Ireta had filed a formal grievance appeal, seven months since Ireta initiated her initial grievance, and twenty-three months since Ireta and her supervisor, Lois Bishop began to raise concern about Ireta's position with NLU's superiors and HR.

50. As afforded by NLU complaint policy, Ireta acted in good faith and declined to meet with Bergmann or Johnson until Ireta could be in contact with the President. Johnson stated that Ireta could not go to the President.

51. That Friday, December 03, 2010, Johnson couriered a letter to Ireta's residence electing to close Ireta's grievance appeal for uncooperative behavior and the decision was non-appealable.

52. The following Monday, December 06, 2010, just less than 30 days after Ireta's EEOC complaint, Ireta's employment was terminated at NLU for being 'insubordinate and creating a bad working environment.' **(Exhibit O)**

53. Ireta was offered a severance package in exchange for Ireta's waiver of right to sue National Louis University; Ireta turned down said package plan.

54. NLU's Severance Pay policy and plans are only afforded to eligible employees in good standing or for involuntary termination due to administrative reorganization; NLU's claims for Ireta's discharge did not qualify Ireta for such plan and is a clear violation of NLU's policies.

55. NLU failed to provide Ireta a safe and healthy working condition, despite Ireta's various pleas.

56. Despite NLU's documented knowledge of Ireta's impaired condition and physician's warning, NLU continuously harassed her, strategically plotted against Ireta, deliberately colluded to obstruct Ireta's efforts to transfer positions, and on various times, told Ireta she was being emotional, irrational and erratic, and even hostile.

57. Ireta private emotional reactions to the abuse she received at the hands of NLU's administrators had no negative impact on Ireta's job performance, work environment, or her peers; besides those involved or named in Ireta's grievance, no one was aware of the difficulties she was facing against her superiors and Human Resources.

58. Ireta always remained professional under the circumstances and the negative environment created by NLU's willful neglect, dilatory investigations, biased conclusions, and lack of action to protect an employee and her rights.

59. Ireta never received any disciplinary warnings throughout her employment at NLU and her employment record remains clear of any verbal, written, or implied disciplinary notices.

60. Ireta filed with the Illinois Department of Employment Security ("IDES") and was awarded unemployment benefits in a Determination citing that NLU was dissatisfied with Ireta's attitude, however, NLU's reasons were not sufficient in the definition of "misconduct" under the Law. IDES further stated that Ireta sought unbiased investigators during a grievance filed against said investigators.

61. National Louis University appealed said benefits citing misconduct without any substantiated support and has changed their stance various times; the matter is currently pending judgment in the Appellate Court of Illinois First District (12-0567)

62. On December 05, 2012 Ireta filed this Complaint with this Court.

## CONCLUSION

63. Ireta is still unemployed and has been unable to secure new employment due to the negative effect of her wrongful termination and the impact on her professional and personal reputation.

64. Ireta has lost her home, sold her possessions, and relies on family for support to meet her basic needs and debts.

65. Ireta has remained untreated by a health professional since she loss her health benefits at NLU.

66. Ireta continues to suffer from depression and has difficulty coping with the deep emotional distress and anxiety this ordeal has caused her as early as September 2008.

67. Ireta is seeking relief and damages in the amount of $75,000.00 from National Louis University, *et al.*

68. Such relief is justified by the loss of income the last 24 months, the damage to Ireta's professional and personal reputation, the loss of Ireta's home property, the loss of Ireta's personal property, and continued damage and effects to Ireta's health and mental stability.

69. National Louis University, *et al.* has an obligation to protect its employees and their protected rights under NLU rules and policies, Whistle Blowing Policy (**Exhibit P**), Anti-Harrassment Policy (**Exhibit Q**), and the Civil, Labor, and Employment rights and laws of Illinois.

70. Evidence will show that National Louis University willfully and deliberately acted in bad faith, in retaliatory fashion against Ireta, harassed Ireta, and wrongfully terminated Ireta in a retaliatory fashion for her efforts to seek fair and equitable employment practices and wage from National Louis University.

71. Ireta's termination after filing an EEOC complaint and contacting the President of the University directly to complain about NLU's executive administrators, demonstrates retaliation for whistle blowing.

72. It is for these reasons, Ireta comes forth and respectfully files this complaint for judgment and damages against National Louis University, *et al.*

**WHEREFORE,** Plaintiff, Maribel Ireta, respectfully request this Court for relief judgment in the form of punitive, compensatory, special and general damages for loss of earning and pain and suffering, as well as legal and research costs, and any such other and further relief as this Court shall deem proper against National Louis University, *et al.* for retaliatory and wrongful discharge, adverse actions, and acting in bad faith against Ireta by violating and conspiring to violate protected Employment, Labor, Civil and Public Policy Laws.

Respectfully submitted,

December 06, 2012
Date

Maribel Ireta, Plaintiff, *pro se*
474 N. Lake Shore Drive, Unit 5506
Chicago, IL 60611
Telephone: (312) 719-0783

Page 8 of 8

# National-Louis University

**Wheeling Campus**

Human Resources Department
1000 Capitol Drive
Wheeling, Illinois 60090-7201
P 847 947 5275
F 847 947 5610 -5145
~5493~
www.nl.edu

**APPENDIX 1**
Maribel Ireta - 00354179
HR Grievance/Complaint
For Erin Haulotte
May 17, 2010

November 7, 2007

Maribel Ireta
542 W. Arlington Pl. Unit C
Chicago, IL 60614

Dear Maribel,

We are pleased to offer you a full-time employment position at National-Louis University. The following are the terms and conditions of your employment:

1. **Title:** Your position will be *Administrative Assistant III.* Your primary location will be at the Chicago campus.

2. **Duties:** The essential functions of this position are outlined in your job description. This position is classified as non-exempt from the overtime pay requirements of the Fair Labor Standards Act. Your immediate supervisor will be Lois Bishop, Director of Articulation.

3. **Starting Date:** Your date of employment will be November 12, 2007.

4. **Salary/Wages:** You will be paid $16.41 per hour. Your salary may be adjusted from time to time, at the University's sole discretion, based on your performance as well as economic and market factors. NLU employees are given a performance appraisal annually in July (must be employed at least 90 days to receive an appraisal).

5. **Benefits:** If you are a benefit eligible employee, you will receive the standard benefit package for all full-time (30 hours or more per week) employees of National-Louis University. Your benefit information, including employee cost per paycheck, and enrollment forms are enclosed in this packet. PLEASE BE SURE TO REVIEW THIS MATERIAL BEFORE YOUR ORIENTATION SESSION: Should you have questions prior to your orientation date, please refer to the BENEFITS INFO GUIDE on the first page of your benefits information. Please note that eligible employees have only 30 DAYS from their start date to enroll in NLU Benefit plans. Should you not return the enrollment forms to HR within 30 days of your employment, you may be ineligible for benefits until the next open enrollment period (April).

6. **Orientation:** Your new employee orientation will be December 3, 2007 at 9:00 am in room 329 at the Wheeling campus. The Wheeling campus is located at 1000 Capitol Dr. Wheeling, IL 60090.

7. **At-Will Employment:** Although we anticipate that your employment with NLU will be mutually rewarding, your employment in this position, or any other position you may later hold at NLU, will be at will. This means that you will be free to resign your employment at any time and that the University will be free to terminate your employment at any time with or without cause. Only by written contract signed by or expressly on behalf of the President of NLU may an employee's employment be other than at will. No other privileges shall be provided notwithstanding any previous representations or practices to the contrary.

We look forward to you joining NLU. Please indicate your acceptance of this position under the basic terms stated above by signing and returning to the undersigned the enclosed copy of this letter, as well as the new hire paperwork, so that it is received no later than your third day of employment. If you have any questions, please contact Javier Hernandez, Human Resources Generalist, at (847) 947-5275.

Sincerely,

Nancy Offdenkamp, PHR
Employment Manager

ACCEPTED:
DATE: *November 13, 2007*
*11/13/2007*

*EXHIBIT A*

JJH
Enc.

Chicago, IL
Elgin, IL

Skokie, IL
Wheeling, IL
Washington, DC

Tampa, FL
McLean, VA
Beloit, WI

Milwaukee, WI
Nowy Sacz, Poland

**APPENDIX 2**
Maribel Ireta - 00354179
HR Grievance/Complaint
For Erin Haulotte
May 17, 2010

Position Description as posted on the National-Louis University employment website.

CHAAC

CHICAGO CAMPUS

Administrative Assistant III

Office of the Provost

Full Time

| | |
|---|---|
| JOB ID | |
| JOB Location | |
| JOB Title | |
| Department | |
| Status | |
| JOB Description | The primary purpose of the Administrative Assistant III in the area of Academic Affairs is to provide administrative, secretarial and special support for the Vice Provost and various directors in the Office of the Provost. This individual will establish and monitor procedures required to standardize and record academic affairs transactions in an accurate and timely manner and will be responsible for and ensures the integrity of information systems and complete, accurate, and secure records and files related to academic planning, academic alerts, accreditation, Institutional Research and Review Board, student appeals, assessment, and university course outlines. Additionally, the incumbent will build and maintain, in cooperation with the Office of Information Technology, the Office of the Provost Website, ensuring that it will serve as an effective tool for information dissemination and workflow. MINIMUM QUALIFICATIONS: Must have excellent writing and organizational skills, be meticulous in work; excellent computer and communication skills; be able to work well with others and have a high quality work ethic. A minimum of 3 years of related experience is required and a bachelor's degree is preferred for the position. NO PHONE CALLS or AGENCY SOLICITATIONS PLEASE. |

EXHIBIT A1

Mar 09 11 11:47a    River East Condos                    312-836-9088            p.1

 **National-Louis University**

## NON-SUPERVISORY EMPLOYEE PERFORMANCE APPRAISAL FORM

| Year: 2007-2008 |
|---|

*The grey fill-in boxes below will expand as you type.*

Employee: MARIBEL IRETA                    Title: ADMINISTRATIVE ASST. III

Department: PROVOST OFFICE                  Campus: CHICAGO CAMPUS

Supervisor: LOIS BISHOP                     Title: Director, Articulation & Compliance
            ANA MARIA SOTO                         Executive Director, Latino Initiatives

---

**Standard of Performance**

*5 = Outstanding* - Employee always exceeds all expectations and job requirements, displays superior skills and exceptional attitude.
*4 = Highly Effective* - Employee regularly meets and periodically exceeds job requirements, displays a high level of commitment to the position.
*3 = Meets Expectations* - Employee meets the basic job requirements of the position in a competent manner. Employee performs job requirements as expected.
*2 = Needs Improvement* - Employee meets some job requirements but only minimally meets the overall expectations of the position.*
*1 = Unsatisfactory* - Employee does not meet job requirements and requires significant improvement to remain with the University.*
*** Employees rated a 1 or 2 overall must be placed on a Performance Improvement Plan upon receipt of the delivered review. Please contact Human Resources for assistance.**

---

**Overall Performance Rating** *(check one)*        1 ☐  2 ☐  3 ☐  4 ☒  5 ☐
**Supervisor comments:**

Maribel began working in the Office of the Provost six months ago. Being new to higher education and to NLU, her performance has exceeded expectations. She learned and performed the basic job responsibilities for Articulation and Compliance activities and has added support responsibilities for the Latino Initiatives. She has demonstrated independence and initiative by developing and implementing new activities and projects. Some examples of this are: the many of details of the Caesar Chavez event and the bulletin board for Latino students. Maribel has made positive contributions to the overall functioning of the Office of the Provost by providing support services to every member in the Office and to a number of others here at NLU, to include a number of students, the President and the Vice President for Enrollment. Maribel is a great asset to the Office of the Provost and to NLU.

---

**ACKNOWLEDGEMENTS** *(Please do not sign until after Human Resources has reviewed and approved)*

| Type Information Below: | Date |
|---|---|
| MARIBEL IRETA | 6/6/2008 |
| Employee* | Date |
| LOIS BISHOP | |
| ANA MARIA SOTO | 6/6/2008 |

Page 1 of 10

EXHIBIT B

# NATIONAL - LOUIS UNIVERSITY

## HUMAN RESOURCES POLICY AND PROCEDURE

| | |
|---|---|
| **POLICY TITLE:** | Compensation and Salary Administration |
| **EFFECTIVE DATE:** | January 2005 |
| **SCOPE:** | Full-time staff , Part-time staff |

**PURPOSE**

The principal objective of the University's salary administration program is to enable the organization to attract, retain and motivate the highest performing staff employees possible.

**POLICY**

All staff employed by the University should be assigned to a position which corresponds directly to the established Salary Structure.

- Maximum or above maximum of the range: A staff employee at or above the maximum of their respective pay grade should receive no pay increase added to base pay until such time that the maximum of that pay grade is adjusted upward, except when approved by the Vice President of Human Resources or other designated officers of the University. A staff employee at the maximum or over the maximum of their salary grade may receive a one-time merit-based lump sum payment equivalent to the percent of the increase based on the performance evaluation.
- Below minimum of the pay range: A staff employee will be within the pay range of an assigned grade; no staff should be paid below the minimum of their respective position grade as prescribed by the recommended Salary Structure unless the individual(s) is an anomaly and/or noted exception.

**Promotion**

A staff employee of the University appointed to a new position at a higher grade should receive a pay increase which is either equivalent to the minimum of the new pay grade or 10 – 15% percent above the individual's present salary, whichever is greater. Final determination of the increase will be approved by the Office of Human Resources.

**Hiring**

Newly hired staff employees' salaries will be based on the following parameters:

1. Years of directly related and documented experience
2. Internal equity
3. Competitive external market data
4. Departmental budgets

1

EXHIBIT C

Newly hired staff employees' salaries should be no less than the minimum of their respective salary grade and no more than the midpoint of the salary grade. Any exceptions will require the approval from the Vice President of Human Resources.



## Position Reevaluation and Reclassification

A staff employee's position will be re-evaluated and assigned to a different salary grade whenever it becomes evident and can be demonstrated that:

- The salary grade to which the position was initially assigned was incorrect; or
- The employee's duties and responsibilities have changed to such an extent that the position has increased or decreased to warrant a change in the salary grade.

To reclassify a position, the following documents are required:

- Completed Position Description Questionnaire for the new position, (i.e., position considered for reclassification);
- Written rationale by the immediate supervisor for the position which clearly articulates the significant changes in position duties and/or responsibilities and required knowledge, skills and abilities; and
- Any further supporting documentation deemed relevant by the immediate supervisor to support the decision.

When a position is reclassified to a higher pay grade, the employee should be placed in the new grade with the appropriate pay increase approved by the Office of Human Resources.

When an employee's position is reclassified, a salary adjustment may occur to ensure compliance with the University's compensation plan.

## Voluntary Transfer to a Lower Grade

If a staff employee is transferred at their own request to a position with a lower grade, a salary adjustment may occur to ensure compliance with the University's compensation plan. However, under no circumstances will any transfer or move to a lower grade exceed the maximum pay for the position.

## Involuntary Transfer to a Lower Grade

When a staff employee is given an involuntary transfer to a position with a lower grade or same grade, a salary adjustment may occur to ensure compliance with the University's compensation plan.

## Interim Position Appointment

A staff employee appointed to the acting capacity of a position requiring additional responsibilities, may be given a stipend for the period of the assignment to the position. This stipend will be determined by the Office of Human Resources and the staff employee's supervisor.

2

## New Positions

With regard to new positions, a Position Description Questionnaire (PDQ) should be prepared, evaluated and assigned to a salary grade by the Office of Human Resources before it is advertised, an employment offer is tendered or a salary is established. The appropriate Director and/or Supervisor responsible for the new position should offer recommendations to the Office of Human Resources for his/her disposition and/or action.

Positions will be slotted into the current salary structure based on the level and scope of responsibilities, duties performed and the value in relation to other positions in the salary structure and the relevant position market.

## Temporary Exception Salary Ranges

The University intends to use the same salary range minimum and maximum for all of the positions assigned to a given salary grade. However, there are times when in order to be competitive and/or create the proper salary relationships between superiors and subordinates, it is necessary to use range minimums and maximums for positions and position families which are higher than the minimums and maximums used for other positions in the same grade(s). Usually this is attributable to temporary supply-demand imbalances in the labor market. In such cases, temporary exception salary ranges are assigned to the positions or position families in question even though the grade assignments of the positions remain unchanged.

Competitive salary data for positions which have been assigned temporary exception salary ranges are checked annually and, when appropriate, the use of exception ranges is discontinued.

## Non-Exempt Staff Employee Pay

In accordance with the Fair labor Standards Act, non-exempt staff employees will be paid one and one-half times their regular hourly rate of pay for all hours worked in excess of 40 hours in a workweek.

## Exempt Staff Employee Pay

Exempt staff employees are not eligible for overtime pay as outlined in the Fair Labor Standards Act.

APPENDIX 4a
Maribel Ireta - 00354179
HR Grievance/Complaint
For Erin Haulotte
May 17, 2010

Maribel Ireta

From:       Lois Bishop
Sent:       Friday, May 23, 2008 3:09 PM
To:         Maribel Ireta; Ana Maria Soto
Subject:    Admin III desc
Attachments: Admin Asst III – Provost.doc; PDQ – Admin Asst III – Provost.doc

Maribel and AnaMaria,
Here is the job info that we have for the position description that we have for Maribel's job. After we complete this year's
review we'll need to revisit the PDQ to make it accurate for what Maribel is actually doing. ☺
Lois

From: Javier Hernandez
Sent: Thursday, May 22, 2008 4:37 PM
To: Lois Bishop
Subject: RE: Copy of PDQ

Hi Lois,

I have not forgotten about you.. I have been looking around to see what I could locate for you. This is what I was able to find
electronically. By the look of it we would need to come up with a PDQ for Maribel. From what I remember I think this position
was to replace Edyth Leone but I don't think she is doing what Edyth did and I think she reported to George at the time. By
doing this Appraisal, we should be able to come up with a current PDQ for the position.

Thanks,

*Javier J. Hernandez*
Human Resources Generalist
National-Louis University
1000 Capitol Dr.
Wheeling, IL 60090
P/F: 847-947-5215

This message and any attached documents contain information which may be confidential, subject to privilege or exempt from disclosure
under applicable law. These materials are solely for the use of the intended recipient. If you are not the intended recipient of this transmission
you are hereby notified that any distribution, disclosure, printing, copying, storage, modification or the taking of any action in reliance upon
this transmission is strictly prohibited. Delivery of this message to any person other than the intended recipient shall not compromise or waive
such confidentiality, privilege or exemption from disclosure as to this communication.

If you have received this communication in error, please notify the sender immediately and delete this message from your system.

From: Lois Bishop
Sent: Thursday, May 22, 2008 4:04 PM
To: Javier Hernandez
Subject: Copy of PDQ

Hi Javier,
Can you please send (by email hopefully) a copy of Maribel's PDQ?
Thanks,
Lois

*Lois Bishop*
Director of Articulation & Compliance
122 S. Michigan Ave.
Chicago, IL 60603

EXHIBIT D

1

# NATIONAL - LOUIS UNIVERSITY

# HUMAN RESOURCES POLICY AND PROCEDURE

| | |
|---|---|
| **POLICY TITLE:** | Employee Complaints |
| **EFFECTIVE DATE:** | January 2005 |
| **SCOPE:** | Full-time faculty and staff, Part-time faculty and staff, Student employees |

**PURPOSE**
To identify the established procedure for handling employees' work related concerns and problems.

**POLICY**
NLU policies, rules and procedures are designed to benefit both the employees and the University. Managers are responsible for applying and enforcing them fairly and consistently. Employees who feel that they have been treated in a manner inconsistent with established policies may question or challenge a decision or action through NLU's Employee Complaint procedure. Employees who pursue a complaint through the Employee Complaint procedure will not be discriminated against or suffer any reprisals for using the procedure. An employee complaint is an allegation by an employee that there has been a specific violation, misinterpretation or misapplication of any of NLU's rules, policies or procedures. NLU's actual rules, policies or procedures are not subject to employee grievance.

This policy applies to both faculty and staff. However, if a faculty member has a complaint of an academic nature, they must follow the Faculty Appeals process which can be found in the Faculty Guidebook, section 111.

Complaints are to receive a review and a response without retaliation against the employee voicing the complaint.

**PROCEDURE**
Complaints addressed through other procedures:
*Discrimination or disability:* An employee or applicant with a complaint regarding discrimination or accommodation for a disability should contact the Office of Human Resources as described in the EEO, AAP and ADA policies.

*Sexual Harassment:* Complaints regarding sexual harassment may be advanced through the means described in the Anti-Harassment Policy.

Informal Procedure:
Employees and their supervisors are expected to attempt to resolve complaints professionally and informally. If the complaint is not resolved at this level, the employee

1

EXHIBIT B

is encouraged to informally discuss the complaint with the next higher level of administration and/or Human Resources. If such informal methods do not result in resolution of the complaint, or if the employee so chooses at the onset, he/she may choose to proceed to the more formal procedures outlined below.

Complaints that cannot be grieved
- Termination during the initial 90 day review period;
- A lay off;
- The permanent elimination of a position;
- Any complaint regarding the content of University policies.

Formal Procedure

**1. Complaint Initiation**
The employee must present the complaint in writing to the Director of Diversity and Equal Employment, Office of Human Resources, who will investigate the complaint. This may include a meeting with the person complained against and/or other witnesses. After an investigation of the complaint, the Director of Diversity and Equal Employment will respond in writing to the employee. If this response concludes with a satisfactory solution, the employee may choose to take no further action. If the employee is not satisfied that the complaint has been resolved, the employee may proceed to the next step.

**2. Administrative Review**
Within 5 business days of receiving the response from the Director of Diversity and Equal Employment, the employee will present the written complaint, along with the Director of Diversity and Equal Employment's response, to the Vice President of Human Resources. The Vice President of Human Resources will respond to the employee in writing in an attempt to resolve the issue. This step may include an interview with the person complained against and/or other witnesses. If this response concludes with a satisfactory solution, the employee may choose to take no further action. If the employee is not satisfied that the complaint has been resolved, the employee may proceed to the next step.

**3. Final Review**
If, after engaging in the initial steps, an employee does not believe that the complaint has been resolved, he/she may petition the Vice President of Human Resources in writing within 5 business days of receiving the decision. The Vice President of Human Resources shall forward the petition to the President or his/her designee. Given that this is an internal procedure, attorneys are not permitted to attend. The President or designee will communicate its findings to all involved parties within 5 business days of the conclusion of its deliberations. The findings of fact by the President or designee are final and not normally subject to appeal. An appeal, claiming a prejudicial deviation from prescribed procedures, arbitrary and capricious behavior during the hearing, or a recommendation clearly unsupported by the record, must be submitted in writing to the President of the University within 10 working days of receipt of the report. The President of the University may uphold the decision or render an alternate final decision. The Vice

President of Human Resources or his/her designee will follow-up with all parties within 30 days of the decision to ensure that all parties are adhering to the agreed resolution.

**No Retaliation**

No person, including parties and witnesses, exercising his/her rights under this policy or participating in the procedures provided by this policy shall be subject to retaliation or threat of retaliation as a result thereof. If such parties feel that they have been the victim of retaliation, they should notify the Vice President of Human Resources. A finding of retaliation or threat of retaliation shall be investigated immediately by the Vice President of Human Resources.

The complaint procedure herein is not viewed as creating a contractual obligation to any employee concerning the procedures to be followed involving any employee grievance or complaint.

Mar 09 11 11:48a     River East Condos                    312-836-9088              p.2

APPENDIX 7D
Maribel Ireta - 00354179
HR Grievance/Complaint
For Erin Haulotte
May 17, 2010

National-Louis University

## NON-SUPERVISORY EMPLOYEE PERFORMANCE APPRAISAL FORM

Year: 2008-2009                   *The grey fill-in boxes below will expand as you type.*

Employee: MARIBEL IRETA          Title: ADMINISTRATIVE ASST. III

Department: PROVOST OFFICE        Campus: CHICAGO CAMPUS

Supervisor: LOIS BISHOP           Title: Director, Articulation & Compliance
ANA MARIA SOTO                           Executive Director, Latino Initiatives

---

*Standard of Performance*

*5 = Outstanding* - Employee always exceeds all expectations and job requirements, displays superior skills and exceptional attitude.
*4 = Highly Effective* - Employee regularly meets and periodically exceeds job requirements, displays a high level of commitment to the position.
*3 = Meets Expectations* - Employee meets the basic job requirements of the position in a competent manner. Employee performs job requirements as expected.
*2 = Needs Improvement* - Employee meets some job requirements but only minimally meets the overall expectations of the position.
*1 = Unsatisfactory* - Employee does not meet job requirements and requires significant improvement to remain with the University.
*\* Employees rated a ~~2 or a rating 1~~ must be placed on a Performance Improvement Plan upon receipt of the delivered review. Please contact Human Resources for assistance.*

---

Overall Performance Rating *(check one)*          1 ☐  2 ☐  3 ☐  4 ☒  5 ☐

*Supervisor comments:*
*Maribel had set some very ambitious goals for the 08-09 year and she has done a good job of accomplishing them. She has continued learning about NLU and higher education and has anticipated needed actions over the year. She has faced a continual challenge to prioritize activities as the tasks and requests for assistance have grown to exceed the capacity of any one person's job responsibilities with integrity and commitment to quality.*

*Maribel is an effective leader in our office. She takes charge of large projects and works on them until they are completed. She is a great contributor to all the projects that are undertaken by the Office of Latino Initiatives. She is a tremendous asset to our office and to NLU.*

---

ACKNOWLEDGEMENTS *(Please do not sign until after Human Resources has reviewed and approved)*

| Type Information Below: | Date | |
|---|---|---|
| MARIBEL IRETA *Employee\** | 7/7/09 | *(signature)* |
| | Date | |
| LOIS BISHOP ANA MARIA SOTO *Reporting Supervisor/Manager* | 7-7-09 | *(signature)* |
| | Date | |
| Human Resources | Date | |

---

*\*Note that signing a performance review does NOT necessarily indicate agreement with its content but serves to acknowledge its delivery to the employee. All employees have the right to submit a rebuttal to HR regarding any portion of this review for inclusion in their personnel file. All rebuttals must be submitted to HR within 10 days of delivery date.*

EXHIBIT E

APPENDIX 9
Maribel Ireta - 00354179
HR Grievance/Complaint
For Erin Haulotte
May 17, 2010

**ADDITIONAL COMMENTS:**

[Maribel Ireta]

It has been another great and busy year, and I'm glad to be here. I am confident that my attention to detail, motivation and the ethical values I command and inherit continue to be representative in the final product of my efforts and my accomplishments. In the past months, it has been acknowledged that the scope of my position has greatly evolved from its original intention/description into something much more unique and undefined. Despite the unexpected demands of the department, each new opportunity and challenge has enabled me to grow personally and professionally. I am certain the contributions I've made and will continue to make to my position, the Office of the Provost, and various other NLU departments and individuals, far exceed the expectations of an Administrative Assistant III and will help aim my career at NLU in a positive direction. I hope you can agree and are able to see the ultimate role I play here at NLU. I have far more determination and dedication left to share with NLU. I enjoy being a part of NLU; I look forward to prospective opportunities, as well as the experiences I have yet to share, personally and among others. I look forward to another year, another challenge, another relationship and another lesson learned at NLU.

Respectfully,

Maribel Ireta

EXHIBIT F

# NATIONAL-LOUIS UNIVERSITY

## HUMAN RESOURCES POLICY AND PROCEDURE

| | |
|---|---|
| POLICY TITLE: | Recruiting and Selection |
| EFFECTIVE DATE: | January 2005, Amended November 2007 |
| SCOPE: | Staff |

## PURPOSE
To establish uniform guidelines for hiring the most qualified candidates for staff positions.

## POLICY
All candidates for employment shall receive consistent and equitable treatment. The career development of current, qualified University employees shall take priority. The procedures outlined in this policy are meant to ensure a thorough and fair search process, resulting in a qualified pool of candidates from which to make hiring decisions.

For additional information, please refer to NLU's policies regarding Equal Employment Opportunity (EEO) and Affirmation Action.

## PROCEDURE
1. **Job Description and Job Classification**
   - Job descriptions are used to briefly describe a job's primary purpose, essential functions and responsibilities. National-Louis University uses the Position Description Questionnaire (PDQ) form to assist in the completion of job descriptions. Once a job description is completed, it should be used during the interview/hiring process, as well as a standard to guide in performance review or corrective action procedures.
2. **Job Approval**
   - An Authorization to Employ form must be completed and approved prior to any recruitment and selection activities. Once Authorization to Employ form is completed and approved, it must be sent to the Office of Human Resources for processing. The position will be added to the NLU open position list and posted to either or both internal and external sources.
3. **Internal Applicants**
   - Employees who have been in their current position for at least six months may apply for job openings. This may be waived with the consent of the employee's supervisor and the Office of Human Resources. Employees must complete an internal job posting form. Once the form is completed, it must be submitted to the Office of Human Resources along with an updated resume. All internal applicants who post for a vacancy will be considered on the basis of their qualifications and ability to perform the job successfully. Internal

1

EXHIBIT G

candidates who are not selected will be notified by the Office of Human Resources or the hiring manager.

- Internal candidates who are selected for an open position will be subject to a 90-day Introductory Period at the onset of his or her new position.

**4. Recruitment and Advertising**

- Positions are advertised externally based upon the need and budget requirements. The Office of Human Resources is responsible for placing recruitment advertising for open positions.

**5. Interviews**

- In order to determine which applicants are most qualified for the open position, the Office of Human Resources will screen applications and/or resumes to determine applicants who meet the minimum qualifications of the job. Only those applicants who meet the minimum qualifications will be forwarded to the hiring manager for review. The following are steps to be used in the interviewing process:

  - Telephone Screening
    - It is highly recommended that the Office of Human Resources or the hiring manager conduct a phone screen of the applicants to ascertain skill level and interest, and make appropriate recommendations to the hiring manager.

  - Interview
    - The Office of Human Resources and/or the hiring manager conduct interviews of applicants who meet the minimum qualifications of the position. All interviewees are required to complete an application prior to the interview.
    - Committee interviews may be conducted for some positions. If a committee is formed, a structured interview is recommended. Interview questions should be compiled by the committee and reviewed by the Office of Human Resources. After the committee completes the interview process, the results of the interview should be forwarded to the hiring manager for review. The hiring manager has the ultimate responsibility of making the hiring decision.
    - Once interviews have been completed, the hiring manager and the Office of Human Resources will meet to discuss the most qualified candidate(s).

**6. Good Faith Search Effort**

- Employment searches are conducted in compliance with Equal Employment Opportunity laws and the Affirmative Action Program of the University. The Department of Diversity Access and Equity reviews the employment process to insure that the search effort was conducted in good faith compliance with the law and program. This step is completed before an employment offer is made and after the Good Faith Search Form has been completed by the hiring manager.

2

7. **Pre-Employment Assessments**
   - Any candidate selected as a finalist may undergo one or more pre-employment assessments prior to employment. The pre-employment assessments help ensure a candidate has the necessary knowledge, skills and abilities.

8. **Reference and Criminal/Credit Background Checks**
   - Once a decision has been made regarding hiring a candidate, references will be checked by the Office of Human Resources. If necessary, a degree will be verified as well as a criminal background and/or credit check will also be obtained. Should the results be satisfactory, the Office of Human Resources will work with the hiring manager to extend an offer and determine a start date.
   - The list of positions which may require successful criminal and/or credit checks before the Office of Human Resources will make an employment offer includes, but is not limited to:
     o Security Positions
     o Positions involving financial responsibility
     o Officers of the University
     o Custodian / Janitorial / Maintenance positions

9. **Job Offers**
   - Once a final candidate is selected, the Office of Human Resources and the hiring manager will discuss the offer to the candidate. All official employment offers will be extend by the Office of Human Resources.
   - At no time may a hiring supervisor make any reference to the status of an individual's application without express written permission from the Office of Human Resources.

10. **Employment Introduction Period**
    - All newly hired, transferred or promoted employees will be subject to a 90-day Introductory Period at the onset of his or her new position. During this time, the supervisor and employee should work together with the purpose of training and monitoring the new employee to determine that the employee has the required knowledge, skills, abilities required to be successful in his or her new position.
    - It is the responsibility of the supervisor to contact the Office of Human Resources for assistance should it be determined that the newly hired, transferred or promoted employee is not meeting the minimum expectations of the position. The Office of Human Resources and the supervisor will then work together to determine if a Performance Improvement Plan or termination of employment is the appropriate course of action.

**EMPLOYMENT OF FOREIGN NATIONALS**

In certain circumstances, National-Louis University may employ, or make employment offers to, foreign nationals only when U.S. citizens or permanents residents of equal training, experience and competence are unavailable. Such a determination can be made only after a thoroughly documented search and evaluation process. Employment of

3

foreign nationals will be authorized only under the provisions of this policy and when conditions and visa requirements established by Federal law are assured and documented.

In extraordinary circumstances, National-Louis University may choose to sponsor tenures and tenure-eligible teaching faculty for the immigrant visa petition. Such requests must be submitted to the Vice President of Human Resources and to the Provost office. For sponsorship of an immigrant visa, departments or colleges assume the role of a sponsor and all the responsibilities associated with the sponsorship including all the recruiting costs. As sponsor, departments or colleges are required to document that there is reasonable expectation of continued employment as set forth in the university policy. The Vice President of Human Resources is permitted to authorize a private attorney to represent National-Louis University in any nonimmigrant or immigrant petition or application proceedings. The hiring department will be responsible for all expenses relating to this process.

Any offer of employment to a foreign national is considered temporary and is subject to the terms and conditions of the specific visa program's work authorization. Prior to making an offer of employment, the hiring manager must obtain the written approval of the Vice President of Human Resources.

The hiring manager must consult with the Office of Human Resources to determine an appropriate visa category for the position and to determine if there are any obstacles that may interfere with the successful filing of an employment-based visa application.

4

Fax: (773) 857-5885                    COPY

MERLITA CRUZAT-BLANCO, M.D.
2800 N. Sheridan #205 N
Chicago, Illinois, 60657
773-975-9957

Certificate to return to work

Name_____ Maribel Grete

Has been under my care from _____ since June 1, 2010 ___ to _____

and is able to return to school/work on _____

Nature of illness or injury: ____ for medical reasons

Restriction.                     Light work
                                 work
Comments _____ To be off from A party
June 8  2010  for 1½ days,
Could go back   sooner if
She feels  better.

MERLITA CRUZAT- BLANCO, M.D.
2800 N. SHERIDAN RD. STE. 205N
CHICAGO, IL 60657
(773) 975-9957

EXHIBIT H

**From:** Erin Haulotte
**Sent:** Wednesday, July 28, 2010 11:25 AM
**To:** Maribel Ireta
**Subject:** Investigative Findings
**Importance:** High

CONFIDENTIAL
Maribel,
Please be advised that I have concluded my investigation into your grievance filed against Lois Bishop, former Director of Articulation; Ana Maria Soto, Executive Director of Latino Initiatives; Kathy Walsh, Interim Provost, and George Litman, VP for Strategic Initiatives. As the complaint contained numerous allegations I'll address each of them individually later in this memo; however, it is my opinion that the aforementioned individuals have not violated any University Policies. University policies that were reviewed during my investigation were: Code of Conduct, Recruitment & Selection, Compensation & Salary Administration, and Anti-Harassment.

------------------------
Allegation #1: "*hired under false pretenses*" and "*the job description posted on the NLU employment website is a stark contrast to the roles and extensive responsibilities I am expected to perform on a daily basis...*"
Response: Ms. Ireta applied for the position Administrative Assistant III position located at the Chicago campus, and was hired November 12, 2007. The job posting states, "*The primary purpose of the Administrative Assistant III in the area of Academic Affairs is to provide administrative, secretarial and special support for the Vice Provost and various directors in the Office of the Provost.*" Your offer letter dated, November 7, 2007 indicated that your immediate supervisor would be Lois Bishop, Director of Articulation.
Your complaint provided numerous examples of how you believe your role involved more than "simple administrative support" which included: 95% of the various six annual state compliance renewals, upcoming campus closure notifications for three campuses, as well as any other state compliance and transfer guide updates that needed to be addressed, support of Mauricio Ardila, Corporate Business Development Specialist and Traci Dennard, College Bridge Coordinator, organization of various monthly gatherings such as the 'Provost Potluck' and the 'Provost Movie Lunch' as well as farewell receptions for former CAS Dean, Martha Casazza as well as Lois Bishop. The Administrative Assistant III role has evolved as the role of those it supports has evolved -- The Executive Director of Latino Initiatives was new at the time of your hire, and it has evolved as Ms. Soto has developed the Latino initiatives of the University. Staffing changes occurred which impacted the position -- Ms. Bishop resigned and as a result the responsibilities of Articulation were assumed by others. That being said, the people requiring your assistance may have changed, but the need for administrative support has remained consistent. [Note: The two individuals who assumed the responsibilities of Articulation are also members of the Provost's Office and therefore fall within the parameters of the Administrative Assistant III position.] I concur that some of the tasks you described are beyond "simple administrative support" but they are not beyond that of an Administrative Assistant III.

------------------------
Allegation #2: "*I have continuously sought resolution through the proper channels but unfortunately, my encounters have been less than successful and met with <u>discriminatory treatment.</u> I am victim to repeated offenses of deliberate and premeditated acts of misrepresentation, willful negligence, exploitation, and discouragement, collusion, <u>obstruction</u>, and intimidation, on behalf of all of my supervisors, including both Interim Provosts.*" "*...I am continuously and deliberately taken for granted and ignored.*"
Response: There is no denying that you did make multiple University administrators aware of your discontent and your desire for a re-evaluation of the Administrative Assistant III position's responsibilities. While it is disappointing that a member of the NLU Community feels "deliberately taken for granted and ignored," I wasn't presented with any evidence to support the allegation that any perceived inaction was "deliberate or willful" or "discriminatory." However, it is my opinion that Ms. Walsh and Dr. Litman should have become more actively involved once they became aware of your concerns.

------------------------
Allegation #3: "*There has been an obvious and tremendous lack of professionalism and respect imparted by the Office of the Provost.*" This claim immediately includes Kathy Walsh, Interim Provost, [former Interim Provost and President], George Litman, VP of Strategic Initiatives. Each individual has demonstrated their inability to effectively uphold their professional obligation as chief administrative leaders for National-Louis University, including their responsibility to detect, mediate, and resolve transgressions of all kind, to the best of their power, before misdeeds are escalated beyond their control.*"
Response: The University's Code of Conduct Policy states "The core values of the University start with a respect for people. The University also values, trust, loyalty, commitment, honesty and avoiding conflicts of interest." It goes on to further state, "The University expects all employees to treat one another with courtesy, respect and consideration." The Policy is in place with the expectation that all National-Louis University officers, employees and agents "obey all laws in conducting University business, and to always act with honesty, integrity, loyalty, trustworthiness, fairness and responsibility." It is my opinion that Lois Bishop, Ana Maria Soto, Kathy Walsh or George Litman in their interactions with your did not violate the University Code of Conduct Policy. However, as previously stated, I do believe that when Ana Maria and Lois Bishop demonstrated their inability to effectively manage the situation, Kathy Walsh, Carol Melnick [although not named in the complaint] and George Litman, should have more aggressively intervened.

EXHIBIT I

Complainant's Requested Resolution #1: *"I am seeking a retroactive and an evolving delineation of my occupational title, responsibilities and compensation, appropriate for the role I have been asked and expected to undertake at National-Louis; past, present and future"*
Complainant's Requested Resolution #2: *"I expect disciplinary action taken to address the various concerns and individuals responsible for my injustices as I have outlined in this grievance."*
Note: As you know a revised PDQ has already been submitted.

**CONCLUSION:** As previously stated, it is my opinion that the parties named in this grievance did not violate any University policy and *subsequently no disciplinary action is warranted*. That isn't to say that those named in the complaint are without responsibility and appropriate recommendations have been made. I am of the opinion that the issues outlined in your grievance stem from ineffective communication – over communication in certain situations, lack of communication in others and unclear communication throughout. Furthermore, Kathy Walsh, Carol Melnick [although not named in the complaint] and George Litman, should have intervened when they recognized the staff and situation were not being properly managed.
**RECOMMENDATIONS:** I will be facilitating a meeting between you, Ana Maria Soto and perhaps George Litman to clarify misperceptions that have occurred, to review the roles and responsibilities of your position, and review your revised PDQ and salary grade.
----------------------------------------

Please let me know if you have any questions.
Regards,

Erin Haulotte
----------------------------------------
Erin Haulotte| Director of Diversity & Employment |Office of Human Resources
National-Louis University | P/F: 847-947-5491 | Erin.Haulotte@nl.edu | www.nl.edu
*This message may contain confidential and/or proprietary information and is intended for the person/entity to whom it was originally addressed. Any use by others is strictly prohibited.*

 **National-Louis University**

## NON-SUPERVISORY EMPLOYEE PERFORMANCE APPRAISAL FORM

Year: 2009-2010                    *The grey fill-in boxes below will expand as you type.*

Employee:        **Maribel Ireta**            Title:        **Administrative Assistant III**

Department:        **Office of the Provost**        Campus:            **Chicago**

Supervisor:        **Ana Maria Soto**            Title:    **Executive Director, Latino Initiatives**

*Until January 2010:    Lois Bishop            Director, Articulation & Compliance [Former]*

### Standard of Performance

*5 = Outstanding* - Employee always exceeds all expectations and job requirements, displays superior skills and exceptional attitude.

*4 = Highly Effective* - Employee always meets and often exceeds job requirements, displaying a high level of commitment to the position.

*3 = Meets Expectations* - Employee meets and periodically exceeds the basic job requirements of the position. Employee performs all job requirements as expected.

*2 = Needs Improvement* - Employee meets some job requirements but only minimally meets the overall expectations of the position.*

*1 = Unsatisfactory* - Employee does not meet job requirements and requires significant improvement to remain with the University.*

*\* Employees rated a 1 or 2 OVERALL must be placed on a Performance Improvement Plan upon receipt of the delivered review. Please contact Human Resources for assistance.*

**Overall Performance Rating** *(check one)*        1 ☐    2 ☐    3 ☒    4 ☐    5 ☐
*Supervisor comments:*

**ACKNOWLEDGEMENTS** *(Please do not sign until after Human Resources has reviewed and approved)*

Type Information Below:                                                Date

Maribel Ireta,                                                          August 17, 2010
Employee*                                                               Date

Ana Maria Soto,                                                         August 17, 2010
Reporting Supervisor/Manager                                           Date

                                                                        August , 2010
Human Resources                                                        Date

*\*Note that signing a performance review does NOT necessarily indicate agreement with its content but serves to acknowledge its delivery to the employee. All employees have the right to submit a rebuttal to HR regarding any portion of this review for inclusion in their personnel file. All rebuttals must be submitted to HR within 10 days of delivery date.*

EXHIBIT J

From: McCeil Johnson
Sent: Tuesday, September 28, 2010 5:41 PM
To: Maribel Ireta
Cc: Thomas Bergmann
Subject: re: Meeting Requests (Confidential)

Thank you for meeting with Tom and I. During our investigation you will be temporarily re-assigned to George Litman, as your supervisor. In addition, upon return from your vacation on Monday, October 4, 2010, your office will be temporarily relocated to the 5th floor in the Advising Center Office suite.

Please report to my office at 10:00 a.m. on Monday, October 4, 2010 for additional details regarding your new temporary office location. On Tuesday, October 5, 2010 at 10:30 a.m. please report to Tom Bergmann's Chicago Office for an interview to discuss the facts relating to your complaint. As indicated in our meeting , you will not be permitted to tape record any interviews.

If you have questions or concerns regarding this investigation please direct them to Tom and me.

Thanks,

Tom Bergmann
McCeil Johnson

EXHIBIT K

# National-Louis University

Wheeling Campus
Human Resources Department
1000 Capitol Drive
Wheeling, Illinois 60090-7201
P 847 947 5275
F 847 947 5610
www.nl.edu

October 13, 2010

Maribel Ireta
512 N. McClurg Court, Unit 1411
Chicago, IL 60611

Dear Maribel,

Thank you for your application and interview for the position of *Alumni Giving Manager* at National-Louis University.

We found your background and skills to be impressive, and your interview was both insightful and professional. However, after a careful evaluation of your skills and strengths relative to the requirements for the position, we have decided to pursue other candidates at this time.

Once again, we appreciate your interest in the *Alumni Giving Manager*, and we wish you the very best in your future endeavors at National-Louis University.

Sincerely,

Nancy Offdenkamp, SPHR, MBA
Employment Manager

Chicago, IL          Skokie, IL          Beloit, WI          Milwaukee, WI
Elgin, IL            Wheeling, IL        Florida Regional Campus    Nowy Sacz, Poland
Lisle, IL

EXHIBIT L

Dec. 13. 2010  9:53AM                                    No. 6857   P. 2/2

 **National-Louis University**

| CONFIDENTIAL | Written Notice of Termination | CONFIDENTIAL |
|---|---|---|

| | |
|---|---|
| Maribel Ireta | November 12 2007 |
| **Name** | **Date of Hire** |
| Administrative Assistant III | Strategic Initiatives |
| **Title** | **College or Department** |
| *12-6-2010* | *12-6-10* |
| **Date of Termination** | **Last Day Worked** |

**Specific incident(s) prompting termination and/ or work standard violated:** National-Louis University is committed to maintaining a fair and respectful environment for work and study. Reports of possible violations are taken seriously and acted upon in an appropriate and timely manner. The expectation is that during an investigation all relevant individuals would lend their full cooperation. That being said, Maribel has failed to properly and timely cooperate with an ongoing investigation. Her uncooperative, misleading and sometimes hostile/combative behavior during the investigative process has created a contentious work environment making it impossible to continue. Maribel's unprofessional behavior has intentionally hindered the efforts of those who have invested efforts and time into conducting a thorough investigation.

**Effect of this behavior/ incident on University practices and business:** NLU is committed to maintaining an environment that is fair and respectful for all to visit, work and study. As a service organization it relies on its staff and faculty to represent themselves and thereby the institution in the same manner. Maribel's unprofessional behavior has caused those involved with the investigation to unnecessarily take additional steps and expend additional time and effort, thereby adversely affecting the University. Additionally, her unprofessional behavior has created an untenable employment relationship.

All signatures **MUST** be received prior to administration of the termination notice.

| 1. | | 2. *George X.* | |
|---|---|---|---|
| **Immediate Supervisor** | **Date** | **Department Manager** | **Date** |
| 3. *George X.* | | 4. *Tim Reynnann* | *12/6/10* |
| **Divisional Vice President** | **Date** | **Vice President of Human Resources** | **Date** |
| 5. *Nivnie Magabal* *12/6/10* | | 6. | |
| **President** | **Date** | **Employee Signature\*** | **Date** |

*Ire has refused to sign - 12/6/10*
*(Kim Hauber)*

*\*Note: Employee signature does not imply agreement. It serves only to confirm delivery of the document to the employee identified above. This document is not negotiable.*

EXHIBIT D

## DISCLOSURE OF WRONGFUL CONDUCT
## AND PROTECTION FROM REPRISAL POLICY

### OVERVIEW

■ National-Louis University ("NLU" or "the University") encourages its faculty, staff and students to make good faith disclosures of University-related misconduct. The commitment to improve the quality of NLU through such disclosures is vital to the well-being of the entire campus community. Retaliation as a response to such disclosure will not be tolerated. Retaliation, whether actual or threatened, destroys a sense of community and trust that is central to a quality environment. NLU, therefore, wishes to make clear that it considers acts or threats of retaliation in response to such disclosures to constitute a serious violation of NLU policy.

### DEFINITIONS

1.  "**Good Faith Disclosure**" means disclosure of University-related misconduct made with a belief in the truth of the disclosure which a reasonable person in the whistleblower's position could hold based upon the facts. A disclosure is not in good faith if made with reckless disregard for or willful ignorance of facts that would disprove the disclosure.

2.  "**University-related misconduct**" or "**misconduct**" includes any activity by an NLU department or by an employee that is undertaken in the performance of the employee's official duties, whether or not such action is within the scope of the individual's employment, and that is in violation of any state or federal law or regulation or NLU regulation or policy, including but not limited to corruption, bribery, theft of NLU property, fraudulent claims, fraud, coercion, conversation, discrimination, sexual or other unlawful harassment, civil rights violations, misuse of NLU property and facilities, or willful failure to perform one's job duties.

3.  "**Whistleblowing**" means, good faith reporting of real or perceived University-related misconduct.

4.  "**Whistleblower**" means, any student, staff, or faculty who in good faith reports real or perceived University-related misconduct.

5.  "**Retaliation**" means, any adverse action or credible threat of any adverse action taken by NLU, or member thereof, in response to a whistleblower's good faith disclosure of University-related misconduct. It does not include NLU's decision to investigate a good faith disclosure of University-related misconduct.

EXHIBIT P

## POLICY

- NLU relies on its faculty, staff and students to perform their duties and responsibilities in accordance with NLU's policies and procedures. NLU provides various mechanisms to assist and encourage faculty, staff and students to come forward in good faith with reports or concerns about University-related misconduct. Faculty, staff and students may report suspected University-related misconduct without fear of reprisal or retaliation.

## GUIDELINES

- Faculty, staff and students should follow all NLU policies and procedures in carrying out his/her duties and responsibilities for NLU.

- Faculty, staff and students who have a question about the propriety of any practice under NLU policies and procedures should seek guidance from his/her supervisor or an NLU official who has responsibility for overseeing compliance with the particular policy or procedure.

- Faculty, staff or students who become aware of a potential or actual material violation of NLU policies or procedures, should report such potential or actual conduct, regardless of whether the faculty, staff or student is involved in the matter.

- Faculty, staff or students may request that such a report be handled as confidentially as possible under the circumstances, and NLU will endeavor to handle all such reports with discretion and with due regard for the privacy of the reporting employee.

- Faculty, staff or students may make anonymous reports, with the understanding that any investigation may be hampered due to the inability to identify the whistleblower in order to obtain a full and complete account of relevant and necessary facts from the faculty member, staff or student or to ask additional questions or seek clarification as any investigation proceeds.

- Faculty, staff or students who come forward in good faith with reports or concerns about University-related misconduct shall not be subject to reprisal or retaliation for making such a report. Any faculty member, staff member or student who believes that he/she is being retaliated against for making such a report should immediately report the retaliation as follows:

- This policy does not apply to reports of concern over how a faculty or staff member is performing his/her job duties where the conduct in question does not rise to the level of University-related misconduct. Faculty, staff or students who are concerned about the conduct of a University faculty or staff member which does not rise to the level of University-related misconduct (e.g., concern about the style, or manner in which the faculty or staff member is performing his/her job duties) are encouraged to discuss these concerns with the person whose conduct is the subject of concern. If a student, faculty, or staff member does not feel

2

comfortable talking directly with the faculty or staff member whose conduct is the subject of concern, the concerned party is encouraged to talk with Chief Legal Officer.

## REPORTING

- ### Faculty and Staff

  - o Faculty and staff are encouraged to report University-related misconduct to his/her immediate supervisor. If the faculty member or staff member is unable to do so or if there is any reason why this may not be appropriate, the faculty member or staff member should raise the issue with his/her manager, department chair, dean, director, NLU's Chief Legal Officer, the Office of Human Resources, or any NLU office or official who has responsibility for overseeing compliance with the particular policy or procedure in question.

- ### Students

  - o Students are encouraged to report misconduct to a Department Head, the Dean of Students, NLU's Chief Legal Officer or any NLU office or official who has responsibility for overseeing compliance with the particular policy or procedure in question.

- If a faculty member, staff member, or student is concerned about reporting misconduct using the procedure described above, the individual may use the local Whistleblower Hotline -- (312) 261-3820, or call the Chief Legal Officer -- (312) 261-3935 to report the misconduct. The person may also call the Office of Human Resources (847-947-5275). NLU will endeavor to keep the whistleblower's identity confidential to the extent possible within the limitations of law and policy and the need to conduct a competent investigation.

- If any member of NLU's faculty, staff, board of directors or other NLU official receives a complaint about University-related misconduct, that individual should encourage the complaining individual to document the complaint. If the complaining individual does not want to put the complaint in writing, then the person to whom the report is made should document the oral report with a written summary. Once the complaint is documented, it should be forwarded to NLU's Chief Legal Officer for immediate investigation.

## ANTI-RETALIATION

- No members of the NLU community shall engage in retaliation in response to reporting of University-related misconduct or to the filing of a complaint.

- Actions are considered retaliatory if they are in response to a good faith disclosure of real or perceived University-related misconduct and the actions have a materially adverse effect on the working or academic conditions of the whistleblower, or if the whistleblower, as a result of the actions, can no longer effectively carry out his or her NLU responsibilities.

- NLU will make every reasonable effort to stop retaliation immediately, to conduct a complete and thorough investigation of alleged acts of retaliation in a timely manner, to provide remedies to victims of retaliation, and to sanction the perpetrators of retaliation as appropriate.

- The act of good faith disclosure of University-related misconduct shall not be used to make any decision to the whistleblower's detriment, or to subject the whistleblower to adverse conditions that create a hostile working or learning environment.

- To encourage and protect whistleblowers, it is NLU's policy that no reference to the good faith disclosure of University-related misconduct shall be made in personnel files, letters of recommendation, performance appraisals, or any other permanent evaluative documents without the concurrence of the whistleblower.

- Reports of any University-related misconduct that are not made in good faith are not protected under this policy. Those who make false reports in bad faith will be disciplined as appropriate through regular NLU procedures.

4

# NATIONAL - LOUIS UNIVERSITY

## HUMAN RESOURCES POLICY AND PROCEDURE

| | |
|---|---|
| **POLICY TITLE:** | Anti-Harassment Policy |
| **EFFECTIVE DATE:** | January 2005 |
| **SCOPE:** | Full time faculty and staff, Part time faculty and staff, Student Employees |

**PURPOSE**

In keeping with efforts to establish an environment in which the dignity and worth of all members of the institutional community are respected, it is the policy of National-Louis University that harassment of faculty, staff, and students is unacceptable conduct and will not be tolerated.

**POLICY**

National-Louis University is committed to maintaining a fair and respectful environment for living, work and study. To that end, and in accordance with federal and state law, the University prohibits any member of the faculty, staff, administration, student body or, visitors to campus, whether guests, patrons, independent contractors, or clients, from harassing any other member of the University community. Reports of harassment will immediately be investigated and violations of this Policy will be met with appropriate disciplinary action, up to and including termination[1].

**PROCEDURE**

**Discrimination**

1. It is a violation of this Policy to discriminate in the provision of employment opportunities, benefits or privileges to create discriminatory work or learning conditions, or to use discriminatory evaluative standards in employment if the basis of that discriminatory treatment is, in whole or in part, the person's race, color, national origin, age, religion, disability, gender, sexual orientation, pregnancy, military or marital status.

**Harassment**

Harassment, including sexual harassment, is prohibited by federal and state laws. This Policy prohibits harassment of any kind, and the university will take appropriate actions swiftly to address any violations of this policy. Harassment is defined as verbal, non-verbal or physical conduct with the purpose or effect of creating a hostile, threatening or intimidating work or learning environment. Also, verbal taunting (including racial and ethnic slurs) which, in the employee's opinion, impairs his/her ability to perform their job.

---

[1] Tenured faculty should refer to Faculty Policy 115 for a full description of the procedure for Termination of Tenured Faculty for Cause.

1

EXHIBIT Q

Examples of harassment are:

1. Comments which show hostility regarding a person's nationality, origin, race, color, religion, gender, sexual orientation, age, disability, pregnancy, marital or military status. Slurs, epithets or negative stereotyping.

2. Distribution, display or discussion of any written or graphic materials that include denigrates, insults, belittles, or shows hostility or aversion towards an individual, or group because of national origin, race, color, religion, age, gender, sexual orientation, disability or other protected status.

**Sexual Harassment**

Sexual harassment is defined as unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature. Such conduct is sexual harassment when:

1. Submission to such conduct is made either explicitly or implicitly a term or condition of an individual's academic status or employment.

2. Submission to or rejection of such conduct by an individual is used as the basis for academic or employment decisions affecting the individual.

3. Such conduct has the purpose or effect of unreasonably interfering with an individual's academic or work performance or creating an intimidating, hostile, or offensive working environment.

4. Use of electronic mail or computer dissemination of sexually oriented, sex-based communications.

Sexual harassment may often be a specific form of discrimination in which the power inherent in a faculty members or supervisor's relationship to his or her students or subordinates is exploited. This policy recognizes that sexual harassment may occur between persons of the same University status, e.g. faculty-faculty, staff-staff as well as faculty-student or supervisor-subordinate. Sexual harassment may occur where inverse power relationships exist as when a student exhibits such behavior toward faculty or staff. It may occur between persons of the same sex. Both men and women may initiate these behaviors. Faculty, staff, or student employees who are negatively affected by the behavior of others, even though the behavior is not directed towards them, may bring claims of third-party harassment.

**Consensual Relationships Policy**

National-Louis University prohibits romantic or sexual relationships only in circumstances in which one of the individuals is in a position of direct professional power over the other. In that circumstance, both the University and the person in the position of superior power are vulnerable to charges of harassment from the person in the position of lesser power or from third parties.

A professional power relationship is defined as a faculty member or supervisor having such direct power if the student is in an educational experience in which the faculty member has the authority to assign grades, or the supervisor has any input into the evaluation of the employee's work performance, promotion or tenure. A faculty member

2

will be treated as having such direct power in other circumstances as well, e.g. when serving on thesis, dissertation, or scholarship awards committees, or in matters of admissions and advisement. The same principles which apply to the faculty-student relationship, also govern administrative faculty in their relationships with students.

Faculty, staff and administration should be aware of the possibility that an apparent consensual relationship with a student or a subordinate may be interpreted (either at the time or at a later date) as non-consensual and therefore, sexual harassment. Moreover, faculty, staff and administrators, particularly in relationships with students and persons under their supervision, need to be aware of potential conflicts of interest and the possible compromise of their evaluative capacity. They need to be aware that a sexual relationship may give rise to a perception on the part of others that the evaluative capacity of the faculty member or the supervisor has been compromised. The power differential inherent in faculty-student and supervisor-subordinate relationships may compromise the student's or the subordinate's ability to make decisions and thus may call into question the bona fide consensual nature of a relationship.

**Complaint Procedure**
The following procedures are designed to provide flexibility in reporting for the person complaining of discrimination and/or harassment, while balancing the interests of the accused party and the University's need to obtain the information necessary to resolve these discriminatory and harassment issues in its community.

1. Reporting and resolution - All incidents of discrimination and/or harassment must be reported to a supervisor/manager or the Office of Human Resources. Complaints will be treated with discretion and will be promptly and thoroughly investigated. After investigation of the complaint has been concluded, the Complainant will be advised of the results of the investigation. NLU will take appropriate disciplinary action, up to and including termination, against any individual found to have harassed another employee, a student or any other person at the University. Resolution may include, but is not limited to: an apology by the respondent, a commitment by the respondent not to repeat the offending behavior and/or to take steps to achieve that goal by, for example, seeking counseling. No further proceedings with regard to the resolved complaint will be permitted, unless the complaint later becomes relevant in the context of another complaint.
2. Confidentiality – NLU is committed to balancing the interests of all parties involved in any discrimination or harassment complaints and will attempt to keep the name of the complainant confidential as well as respecting the rights of the accused harasser. However, the University recognizes that there are certain situations, which may require disclosure of information. Further, when credible information received through an investigation shows that there may be violations of other University policies, than the appropriate officials will be notified.
3. Files - During an investigation of a complaint, and, upon the completion of an investigation, the custodian of the file shall be the Office of Human Resources.
4. If there is a real or perceived conflict of interest involving the actions of the designated University official or University office typically responsible for

3

handling matters of concern for a student, employee or faculty member, an alternative University representative or University office can be contacted. Alternate representatives may include the Student Services Office, the University Ombudsperson, Provost's Office, Department of Diversity, Access & Equity or Office of Human Resources. The alternate University representative or office may then designate an impartial and appropriate University official to resolve the matter following applicable University policy.

5. Groundless or Malicious Charges – Accusations of sexual harassment are treated with the utmost seriousness. They should never be made casually or without cause. This policy shall not be used to bring groundless and malicious charges against students, faculty members or employees. The same sanctions appropriate to a violation of the sexual harassment policy apply to those who bring charges in bad faith. At any time during the complaint process, the respondent may provide evidence to the Office of Human Resources that the charges are groundless or malicious. Bringing groundless and malicious charges may result in disciplinary action, up to and including termination. Additionally, they may also result in legal liability for the person filing the charge(s).

6. Prohibition Against Retaliation – The University has adopted a strict zero-tolerance policy of retaliation against anyone who, in good faith, reports what they believe to be discrimination and/or harassment, or who cooperate in any investigation. Any student or employee who believes that he/she has been the victim of retaliation for reporting discrimination and/or harassment or cooperating in an investigation should immediately contact the Office of Human Resources.

**Responsibilities**

Harassment is illegal. It is important for Administrators, Faculty and Staff to understand their responsibilities.

1. All Faculty, Staff, and students must share in the responsibility of understanding and preventing discrimination and harassment. But, ultimately, no satisfactory investigation or resolution can occur without the initiative and continued cooperation of the person being discriminated and/or harassed. Individuals who believe they have been discriminated and/or harassed have the primary obligation to inform a supervisor or the Office of Human Resources.

2. Supervisors have the special responsibility to act promptly to eliminate any discrimination or harassment which exists in their areas of responsibilities. If the supervisor has knowledge of discrimination, harassment or retaliation that is occurring, they must take immediate action to address the situation. Such actions could include, but are not limited to, speaking with the victim, developing a specific account of the action, omissions or occurrences that are alleged to be discrimination, harassment, or retaliation, consultation with the Office of Human Resources, and administering corrective or disciplinary action up and including termination.

3. Supervisors are responsible for the actions of subordinate employees with regard to discrimination and/or harassment when the supervisors knew or reasonably should have known about the conduct.

4. Supervisors are responsible for any employment action or decision regarding an individual when these actions or decisions can be shown to be a result of sexual favors that were granted or denied by the individual(s) affected.
5. Supervisors are responsible for acts of sexual harassment from non-employees if the manager knew or reasonably could have been expected to know about offensive conduct and failed to take action.

Supervisors may be exempted from personal liability, however, if they take immediate action, which could be to refer the matter to their superior or the Office of Human Resources.

If a supervisor is unable to demonstrate that they have satisfied the above responsibilities, they may be named in a complaint and subjected to administrative investigations or civil proceedings. Also, they could, as an individual, be made liable for part or all of the monetary damages assessed to the defendant(s) by the court.

Supervisors must contact the Office of Human Resources when they receive a complaint or suspect a situation of discrimination, harassment or retaliation.

Anyone affiliated with the University who believe that they have been discriminated and/or harassed can file a Charge of Discrimination with the Illinois Department of Human Rights, which will investigate the Charge and determine whether there is substantial evidence of harassment or discrimination. The Department of Human Rights and/or the employee may also have the right to file a Complaint with the Illinois Human Rights Commission on behalf of the employee. The Illinois Human Rights Department and the Illinois Human Rights Commission are located at the James R. Thompson Center, 100 W. Randolph, Suite 10-100, and Chicago, Illinois, 60601. Similarly, individuals can file with their own State Fair Employment Practices Agency or the U.S. Equal Employment Opportunity Commission in their region. For example, the Illinois District EEOC Office is at 500 W. Madison, Suite 2800, and Chicago, Illinois 60661. Additionally, if the issue involves a student in any manner, the student can file at his/her regional U.S. Department of Education Office for Civil Rights. For example, the Illinois and Wisconsin Regional office is at 111 N. Canal Street, Chicago, Illinois, 60606.

# EXHIBIT B

| | | |
|---|---|---|
| 2120 - Served | 2121 - Served | |
| 2220 - Not Served | 2221 - Not Served | |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| SUMMONS | ALIAS - SUMMONS | |

`* 0 0 8 8 9 6 9 7 *`

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT,** _____ LAW _____ DIVISION

2012 L 013720

CALENDAR/ROOM Y
TIME 00:00
Retaliatory Discharge

402
4919

MARIBEL IRETA

_____ (Name all parties)

v.

NATIONAL LOUIS UNIVERSITY, George Litman

No. _____

National Louis University

5202 Old Orchard Road- Math Dept.

Skokie, IL 60077

## ⦿ SUMMONS ◯ ALIAS SUMMONS

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

⦿ Richard J. Daley Center, 50 W. Washington, Room _____, Chicago, Illinois 60602

◯ **District 2 - Skokie**
5600 Old Orchard Rd.
Skokie, IL 60077

◯ **District 3 - Rolling Meadows**
2121 Euclid
Rolling Meadows, IL 60008

◯ **District 4 - Maywood**
1500 Maybrook Ave.
Maywood, IL 60153

◯ **District 5 - Bridgeview**
10220 S. 76th Ave.
Bridgeview, IL 60455

◯ **District 6 - Markham**
16501 S. Kedzie Pkwy.
Markham, IL 60428

◯ **Child Support**
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 99500

Name: Maribel Ireta

Atty. for: pro se

Address: 474 N Lake Shore Drive, Unit 5506

City/State/Zip: Chicago, IL 60611

Telephone: (312) 719-0783

WITNESS, CLERK OF CIRCUIT COURT

Clerk of Court

Date of service: DEC 06 2012
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____

(Area Code)    (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| SUMMONS | ALIAS - SUMMONS |

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS** L 013720

COUNTY DEPARTMENT, _____ LAW    CALENDAR/ROOM Y
TIME 00:00
Retaliatory Discharge

No. _____

MARIBEL IRETA _____

                                    (Name all parties)

                    v.

National Louis University

5202 Old Orchard Road- Math Dept.

Skokie, IL 60077

NATIONAL LOUIS UNIVERSITY, George Litman _____

## ⊙ SUMMONS ○ ALIAS SUMMONS

**To each Defendant:**

    YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

⊙ Richard J. Daley Center, 50 W. Washington, Room _____, Chicago, Illinois 60602

○ District 2 - Skokie           ○ District 3 - Rolling Meadows        ○ District 4 - Maywood
   5600 Old Orchard Rd.            2121 Euclid                           1500 Maybrook Ave.
   Skokie, IL 60077               Rolling Meadows, IL 60008             Maywood, IL 60153

○ District 5 - Bridgeview       ○ District 6 - Markham                ○ Child Support
   10220 S. 76th Ave.             16501 S. Kedzie Pkwy.                 28 North Clark St., Room 200
   Bridgeview, IL 60455          Markham, IL 60428                     Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

**To the officer:**

    This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 99500 _____

Name: Maribel Ireta _____

Atty. for: pro se _____

Address: 474 N Lake Shore Drive, Unit 5506 _____

City/State/Zip: Chicago, IL  60611 _____

Telephone: (312) 719-0783 _____

WITNESS, CLERK OF CIRCUIT COURT, _____

Clerk of Court

Date of service: _____ DEC 0 6 2012
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____
                                                    (Area Code)  (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**



## Cook County
## Clerk of the Circuit Court
### Electronic Docket Search
Chancery, Domestic/Child Support, Civil and Law Divisions

Case Information Summary for Case Number
2012-L-013720

Filing Date: 12/6/2012
Division: Law Division
Ad Damnum: $75000.00

Case Type: RETALIATORY DISCHARGE
District: First Municipal
Calendar: Y

### Party Information

| **Plaintiff(s)** | **Attorney(s)** |
| --- | --- |
| IRETA MARIBEL | PRO SE |

| **Date of Service** | **Defendant(s)** | **Attorney(s)** |
| --- | --- | --- |
| | BERGMANN THOMAS | |
| | DIRECTOR LATINO INITIAT | |
| | HAULOTTE ERIN | |
| | JOHNSON MCCEIL | |
| | LITMAN GEORGE | |
| | MEGAHED NIVINE | |
| | NATIONAL LOUIS UNIVERSITY | |
| | PROVOST | |
| | SOTO ANA MARIA _____ | |
| | WALSH KATHLEEN | |

## Case Activity

Activity Date: 12/6/2012                                        Participant: IRETA MARIBEL

RETALIATORY DISCHARGE COMPLAINT FILED

Court Fee: 337.00                         Attorney: PRO SE
Ad Damnum Amount: 75000.00


Activity Date: 12/6/2012                                        Participant: IRETA MARIBEL

CASE SET ON STATUS CALL

Date: 1/28/2013                    Judge: BARTKOWICZ, RONALD F.
Court Time: 0900


Activity Date: 12/6/2012                                        Participant: IREA MARIBEL

SUE OR DEFEND AS A INDIGENT PERSON - ALLOWED

Judge: HUBBARD, ARNETTE R.


Activity Date: 12/6/2012                                        Participant: IRETA MARIBEL

CASE SET ON INDIVIDUAL CALENDAR


Activity Date: 12/11/2012                          Participant: NATIONAL LOUIS UNIVERSITY

SUMMONS SERVED - CORPORATION/COMPANY/BUSINESS

Date: 12/11/2012                    Microfilm: LD000000000
Court Fee: 60.00


Activity Date: 12/11/2012                          Participant: NATIONAL LOUIS UNIVERSITY

SUMMONS SERVED - CORPORATION/COMPANY/BUSINESS

Date: 12/11/2012                    Microfilm: LD000000000
Court Fee: 60.00


Activity Date: 12/11/2012                          Participant: NATIONAL LOUIS UNIVERSITY

SUMMONS SERVED - CORPORATION/COMPANY/BUSINESS

Date: 12/11/2012                    Microfilm: LD000000000
Court Fee: 60.00


Activity Date: 12/11/2012                          Participant: NATIONAL LOUIS UNIVERSITY

SUMMONS SERVED - CORPORATION/COMPANY/BUSINESS

Date: 12/11/2012          Microfilm: LD000000000
Court Fee: 60.00

Activity Date: 12/12/2012                    Participant: LITMAN GEORGE

SUMMONS SERVED - PERSONAL SERVICE

Date: 12/10/2012          Microfilm: LD000000000
Court Fee: 60.00

Activity Date: 12/14/2012                    Participant: HAULOTTE ERIN

SUMMONS SERVED - PERSONAL SERVICE

Date: 12/12/2012          Microfilm: LD000000000
Court Fee: 60.00

Activity Date: 12/19/2012                    Participant: BERGMANN THOMAS

SUMMONS SERVED - PERSONAL SERVICE

Date: 12/17/2012          Microfilm: LD000000000
Court Fee: 60.00

Activity Date: 12/26/2012                    Participant: SOTO ANA MARIA _____

SUMMONS SERVED - PERSONAL SERVICE

Date: 12/21/2012          Microfilm: LD000000000
Court Fee: 60.00

Please note: Neither the Circuit Court of Cook County nor the Clerk of the
Circuit Court of Cook County warrants the accuracy, completeness, or the currency
of this data. This data is not an official record of the Court or the Clerk and may
not be represented as an official court record.

If data does not appear in a specific field, we likely do not have the responsive data
in our master database.

Start a New Search